UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
JUNE HARPER,

                Plaintiff,

    -against-                             **COMPLAINT**

DETECTIVE ARTHUR LEAHY, shield no. 01783,
DETECTIVE DANIEL KIRK, shield no. 11290,
DETECTIVE CHRISTOPHER TEHAN, shield no. 29544,   16-cv-04178
DETECTIVE CHING NIEH, shield no. 27,
THE CITY OF NEW YORK,                    ECF Case
POLICE OFFICER JOHN DOE,

                        **JURY TRIAL**
           Defendants.          **DEMANDED**
---------------------------------------------------------------------X

      Plaintiff, June Harper, ("Ms. Harper"), by her attorneys, Carla Sanderson, Esq.

and Andrew Mancilla Esq., and complaining of the Defendants, above-named, sets forth

the following, upon information and belief:

<u>**PRELIMINARY STATEMENT**</u>

      1.     This is a civil rights action brought by Plaintiff June Harper to seek relief

for Defendants' violation of her rights, privileges, and immunities secured by the civil

rights act of 1871, 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the

United States Constitution, and the Constitution and laws of the State of New York.

      2.     But this lawsuit is also about much more than Ms. Harper's civil rights, it

is about the civil rights of thousands of New Yorkers that the NYPD systematically

violates on a regular basis as a result of New York City Police Department's

implementation and enforcement of a policy, practice and/or custom of unconstitutional

home entries by the NYPD.

      3.     This action challenges the constitutionality of the NYPD policy, practice

and custom of violating the Fourth Amendment rights of individuals when executing

bench and arrest warrants in private homes. In particular, this lawsuit challenges the illegal actions of Defendants for falsely arresting, assaulting, and maliciously prosecuting Ms. Harper for refusing them entry into her home even though they did not have legal authority to enter.

4.    From the time detectives arrived at her home on July 28, 2015 to the moment of her Not Guilty verdict nearly one year later, Defendants treated Ms. Harper as if she had no rights. Ms. Harper's injuries are not unique, as the rights of countless individuals have been violated through NYPD officers frequent abuse of authority in the execution of bench and arrest warrants at private homes.  It is for this reason that the impact of this case and the results sought herein cannot be overstated.

## JURISDICTION AND VENUE

5.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4) as this is a civil action arising under the Constitution of the United States and the laws of the United States. This Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the supplemental claims arising under New York State law pursuant to 28 U.S.C. §1367(a).

6.    Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(a), (b), and (c) because claims arose within this district.

## THE PARTIES

7.     Plaintiff, Ms. Harper, is a 48 year old mother of five and grandmother of one. She is an African-American woman and a resident of Kings County, State of New York.

8.     Defendant City of New York ("City Defendant") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. City Defendant assumes the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the NYPD.

9.     Defendant Arthur Leahy ("Leahy"), shield no. 01783, is and was at all relevant times an officer, employee, and agent of the NYPD. On the date Ms. Harper was arrested, he was a detective assigned to the 70th precinct. Police officer Leahy is being sued in his individual and official capacity.

10.     Defendant Daniel Kirk ("Kirk"), shield no. 11290, is and was at all relevant times an officer, employee, and agent of the NYPD. On the date Ms. Harper was arrested, he was a detective assigned to the 70th precinct. Police officer Kirk is being sued in his individual and official capacity.

11.     Defendant Christopher Tehan ("Tehan"), shield no. 3558, is and was at all relevant times an officer, employee, and agent of the NYPD. On the date Ms. Harper was arrested, he was a detective assigned to the 70th precinct. Police officer Tehan is being sued in his individual and official capacity.

12.     Defendant Ching Nieh ("Nieh"), shield no. 00027, is and was at all relevant times an officer, employee, and agent of the NYPD. On the date Ms. Harper was arrested, he was a detective assigned to the 70th precinct. Police officer Nieh is being sued in his individual and official capacity.

13.     Defendant John Doe ("John Doe"), is and was at all relevant times an officer, employee, and agent of the NYPD. Police officer John Doe is being sued in his individual and official capacity.

14.     At all times relevant herein, the Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all relevant times, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

## STATEMENT OF FACTS

**A.     Illegal Arrest and Detention of June Harper by Detective Defendants**

15.     On the morning of July 28, 2015, Defendant Leahy was assigned an i-card investigation for Kedar Harper.

16.     Defendant Leahy conducted a computer database search for Kedar Harper and discovered an open bench warrant from New York County issued December 31, 2014, case number 2014NY066663, for conviction of P.L. § 240.20, a non-criminal disorderly conduct violation.

4

17.     The database search revealed an address associated with Kedar Harper of 910 Caton Avenue, Brooklyn, New York ("910 Caton Avenue").

18.     Detective Leahy did not know when the address of 910 Caton Avenue was entered into the database.

19.     There was no way for Leahy to determine from the database search how old the address was or whether Kedar Harper lived at 910 Caton Avenue on July 28, 2015.

20.     Detective Leahy's database search was the only investigation conducted into Kedar Harper's address on July 28, 2015.

21.     Detective Leahy's database search was the only investigation of Kedar Harper's whereabouts on the morning of July 28, 2015.

22.     Defendants believed that they had permission to enter 910 Caton Avenue because there was an open bench warrant for Kedar Harper and because this address was associated with Kedar Harper in the computer database search.

23.     Defendant Leahy traveled to 910 Caton Avenue with other members of the warrant squad, Defendants Kirk, Tehan, and Nieh.

24.     At approximately 6:30am, Defendants Leahy and Kirk, knocked on the door of Ms. Harper's Brooklyn apartment. Defendants Leahy and Kirk were in street clothes, armed, and wore bullet-proof vests.

25.     Ms. Harper, who had recently woken up and had been caring for her young children, answered the door.

26.     Defendants Leahy and Kirk informed Ms. Harper that they had a warrant for Kedar Harper and that they were present to arrest him.

27.     Ms. Harper informed them that Kedar Harper was not inside her apartment.

28.     Defendants Leahy and Kirk informed Ms. Harper that they had a warrant to search her apartment. Ms. Harper requested to read the warrant.

29.     The document Defendants Leahy and Kirk presented to Ms. Harper did not state they could enter and search 910 Caton Avenue, Apartment 52.

30.     The document did not have a judge's signature on it.

31.     Upon reading the document, Ms. Harper noted it did not state that police were permitted to enter or search her apartment and she requested they return with a search warrant. Ms. Harper began closing the door to return to caring for her children.

32.     Defendants Leahy and Kirk physically stopped the door from closing by entering her apartment. They then grabbed Ms. Harper and pulled her into the hallway.

33.     When they had Ms. Harper in the hallway, Defendants threw Ms. Harper to the ground and continued to assault her in attempt to arrest her. Defendants pulled Ms. Harper's hands behind her back and tightly handcuffed her wrists. Defendants twisted Ms. Harper's arms and handcuffs to intentionally hurt her.

34.     When Phillip Harper, Ms. Harper's husband, came out of the apartment and into the hallway, Defendants ran through the open apartment door and into Ms. Harper's home without consent. Defendants proceeded to unlawfully search her home.

35.     Kedar Harper was not present.

36.     Defendants carried Ms. Harper out of her apartment building causing her humiliation in front of neighbors.

37.     Due to the egregious actions of Defendants in trespassing into Ms. Harper's home, assaulting, and unlawfully arresting her, Ms. Harper suffered shortness of breath and physical pain and was transported to Brooklyn Hospital while in NYPD custody.

38.     Ms. Harper was permitted to walk into the hospital without having her ankles cuffed. However, upon arriving at the hospital NYPD officers cuffed her ankles together.

39.     After being treated at Brooklyn Hospital, Ms. Harper requested NYPD officers remove the ankle cuffs. NYPD Officer John Doe refused to remove the ankle cuffs and said "I'm not here for your comfort" as he maliciously tightened the handcuffs, on Ms. Harper's wrists causing her further pain and suffering.

40.     The NYPD officers charged with transporting Ms. Harper from the hospital demeaned Ms. Harper and confiscated the paperwork provided by medical staff for Ms. Harper's treatment. It was never returned to Ms. Harper.

41.     Ms. Harper was forced to climb into the police van with her hands and feet handcuffed. While in the van, NYPD Officer John Doe maliciously exposed Ms. Harper to extremely hot temperatures causing her physical discomfort and difficulty breathing.

42.     It was over 90 degrees that day and when Ms. Harper informed NYPD Officer John Doe that she needed air, NYPD Officer John Doe intentionally rolled up the windows of the van and refused to open the air conditioning vent to cause further harm to Ms. Harper. Desperate for air, Ms. Harper lied back onto her cuffed wrists and lifted her cuffed feet to the ceiling vent in attempt to open and enable air to flow through.

43.     Ms. Harper was in custody from approximately 7:00 a.m. on July 28, 2015 to 11:30 p.m. on July 28, 2015.

44.     Ms. Harper filed a Notice of Claim on or about September 29, 2015 and a 50-H hearing was held on July 14, 2016. Subsequent to her Not Guilty verdict on July 22, 2016, Ms. Harper filed an Amended Notice of Claim reflecting the verdict on or about July 26, 2016.

**B.     Detective Defendants Conspired to File False Charges Against June Harper to Cover-Up Her Illegal Arrest and Detention**

45.     In addition to their assault and false arrest of Ms. Harper, and illegal search of her home, the Defendants conspired to fabricate criminal charges against Ms. Harper in order to cover up their own illegal actions. After arresting Ms. Harper, the defendants conspired to fabricate lies that Kedar Harper had been inside the apartment that morning, that Ms. Harper intentionally prevented them from arresting Kedar Harper, and that Ms. Harper assaulted them.

46.     To manufacture evidence in support of these lies Defendants decided that Kirk, Tehan, and Nieh, would go to the Methodist Hospital emergency room even though they were not injured. The detectives agreed that defendants Kirk and Tehan would claim that Ms. Harper assaulted and injured them and that defendant Nieh would claim that he was injured "chasing" Kedar Harper out of the window of the apartment, to justify their illegal entry into Ms. Harper's home. None of this was true.

47.     Defendants agreed that Defendant Leahy would falsely inform the Kings County District Attorney's Office that Ms. Harper had assaulted defendants Kirk and Tehan and that because of her assault they were transported to Methodist Hospital for

emergency medical care for physical injuries, and that Defendant Nieh was injured chasing Kedar Harper out of the apartment.

48.     On July 28, 2015, Defendant Leahy carried out the plan. Defendant Leahy informed the Kings County District Attorney's Office that he had a conversation with Kedar Harper though the closed door of Ms. Harper's apartment.

49.     Defendant Leahy informed the Kings County District Attorney's Office that Nieh was injured chasing Kedar Harper out of the window.

50.     Because of these fabrications, Ms. Harper was charged with felony assault in the second degree via criminal complaint.

## C.     The Year-Long Malicious Prosecution of June Harper by Detective Defendants

51.     On or about July 28, 2015 Ms. Harper was arraigned and charged via felony complaint in case number 2015KN048743 with assault in the second degree, assault in the third degree, obstructing governmental administration in the second degree ("OGA"), and resisting arrest.

52.     Defense counsel Carla Sanderson, Esq. spoke to A.D.A. Peter Choi on August 24, 2015, regarding the case. A.D.A. Peter Choi stated that "several officers were injured" and that because of their injuries, he was unsure whether a plea offer would be extended.

53.     On September 29, 2015, the felony complaint was reduced and Ms. Harper was charged with assault in the third degree, OGA, and resisting arrest.

54.     On January 7, 2016, A.D.A. Queenie Paniagua obtained supporting depositions from Detectives Leahy, Kirk, and Tehan that contained sworn false allegations that Ms. Harper assaulted Detectives Kirk and Tehan and caused them

physical injuries. However, because the supporting depositions were filed past the time period proscribed in C.P.L.§ 30.30 the assault charges were later dismissed.

**D.    The Trial of June Harper and false testimony by Defendants**

55.    On June 15, 2016, Ms. Harper waived her right to a jury trial and commenced a bench trial before the Honorable Shawndya Simpson.

56.    Defendant Leahy's testimony confirmed that law enforcement had no authority to enter Ms. Harper's home, that he had trespassed unlawfully into Ms. Harper's home for the purpose of assaulting and falsely arresting her, and that he lied to the Kings County District Attorney's Office.

57.    Defendant Kirk provided sworn false testimony that Ms. Harper assaulted him and defendant Tehan. He provided sworn testimony directly contradicting his sworn supporting deposition regarding how he sustained his alleged injury.

58.    Defendant Tehan testified falsely at Ms. Harper's trial that he was assaulted by Ms. Harper.

59.    Defendant Nieh who illegally searched Ms. Harper's home and went to the hospital to support the false claim he was injured chasing Kedar Harper, was not called as a witness.

60.    When questioned regarding their understanding of authority to enter a private home with a bench warrant, Defendants Leahy, Tehan, and Kirk all revealed an incorrect understanding of the law governing the extent of their authority.

61.    Defendant Leahy testified that he had the authority to search Plaintiff's home for the subject of the search warrant, Kedar Harper.

62.     Defendant Leahy testified that he could search Plaintiff's home for Kedar Harper because he conducted a computer search and found a bench warrant for Mr. Harper issued approximately eight months earlier that contained Plaintiff's address.

63.     Defendant Leahy testified that he did not know how old the information was that associated Kedar Harper with Plaintiff's address.

64.      Defendant Leahy testified that the information retrieved during his computer search was sufficient for him to have authority to search Plaintiff's home.

65.     Defendant Leahy testified that he was not required to conduct any further investigation regarding the address for Kedar Harper.

66.     Defendant Leahy testified that he was not required to conduct any investigation regarding the whereabouts of Kedar Harper prior to the execution of the bench warrant at Plaintiff's home.

67.     Defendant Leahy testified that he did not rely on any other information that gave him authority to enter Plaintiff's home.

68.     Defendant Leahy testified that he was unaware of the age of the information on which he relied.

69.     Defendants Leahy, Kirk, and Tehan each testified that they believed they had the authority to enter Ms. Harper's home based on the old bench warrant for Kedar Harper and that it is their routine practice to enter homes with a bench warrant alone.

70.     On June 22, 2016, Ms. Harper was found Not Guilty of all charges.

71.     Ms. Harper attended each and every Court date for the year she was she was prosecuted (from July 28, 2015 through July 22, 2015), for a total of approximately fifteen (15) court appearances, six (6) of which are days she spent on trial.

**E.      Testimony at Trial Revealed Widespread Civil Rights Violations due to City Defendant's Failure to Train**

72.      Upon information and belief, NYPD officers are not properly trained in the execution of arrest and bench warrants at private homes, and are not properly trained with regard to the rights of parties who are not the subject of the warrant.

73.      Based on the testimony in Ms. Harper's trial, NYPD officers tasked with executing arrest and bench warrants are improperly trained that they can enter a home if the subject is associated with that address in their computer database.

74.      Under the United States Constitution, the New York State Constitution, and federal and state case law, in order to enter a home based on an arrest warrant, law enforcement must have conducted a sufficient investigation to formulate an objectively reasonable belief that the location is the subject's residence and that the subject will be present at the time.

75.      An investigation consisting of a computer database search reflecting an undated address is legally insufficient.

76.      Because of this improper training, NYPD officers routinely and regularly engage in the violation of Fourth Amendment rights of individuals in their own homes, and falsely arrest and maliciously prosecute individuals who invoke their Fourth Amendment rights.

77.      In a report issued in 2015 titled "CROSSING THE THRESHOLD: An Evaluation of Civilian Complaints of Improper Entries and Searches by the NYPD from January 2010 to October 2015," the CCRB stated, "an issue leading to improper entries involves the use of arrest or bench warrants issued several months or even years earlier to enter homes…." *See* Civilian Complaint Review Board, *CROSSING THE THRESHOLD:*

*An Evaluation of Civilian Complaints of Improper Entries and Searches by the NYPD from January 2010 to October 2015*,

http://www.nyc.gov/html/ccrb/downloads/pdf/Crossing-the-Threshold-2010-2015.pdf

(last visited December 17, 2016).

78.     The report found that the majority of substantiated violations occurred against African-American victims. *Id.* at 5.

79.     The report found that in the majority of substantiated complaints officers detained, arrested, or issued summons to individuals after improperly entering or searching their premises. *Id.*

80.     The report recommended that: "The NYPD should ensure that officers executing arrest or bench warrants at homes are trained regarding their obligation to take investigative steps to form a reasonable belief that: (1) the subject of the warrant resides in home; and (2) the subject of the warrant is present within the home at the time of the officers' entry. Fulfilling these obligations takes on a heightened importance when… Officers execute warrants issued several months or years previously." *Id.* at 56.

81.     The report recommends: "The NYPD should require, as part of its body-worn camera program, officers to record an occupant's consent to enter and search, along with the interaction between the officer and occupant that leads to consent." *Id.* at 8.

82.     The report recommends that the Patrol Guide be revised to contain a stand-alone section on the law of search and seizures at homes and businesses. *Id.* at 9.

83.     Defendants' policies, practices, customs and actions violate Ms. Harper's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, New York Constitution, and common law.

84.     Ms. Harper suffered significant injuries, including physical, emotional, and economic harm, due to the above described actions of defendants. Ms. Harper seeks monetary damages, a declaratory judgment and injunctive relief.

**AS AN FOR A FIRST CLAIM FOR RELIEF**
**(Violations of the Fourth and Fourteenth Amendment)**

85.     Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs.

86.     Defendants Leahy, Kirk, Tehan, and Nieh, who were acting in concert and within the scope of their authority, trespassed into Plaintiff's home, arrested and caused Plaintiff to be imprisoned without probable cause in violation of Plaintiff's right to be free from an unreasonable search and seizure under the Fourth Amendment to the Constitution of the United States, and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

87.     Defendants Leahy, Kirk, Tehan, and Nieh, were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD. The City of New York and the NYPD are responsible for Defendants Leahy, Kirk, Tehan, and Nieh's conduct.

88.     Plaintiff suffered injury and damages as a result of Defendants' conduct.

**AS AN FOR AN SECOND CLAIM FOR RELIEF**
**(Violation of Plaintiff's Fourth Amendment Rights)**

89.     Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs.

90.     The use of excessive force by Defendants Leahy, Kirk, and Tehan was an objectively unreasonable physical seizure of Plaintiff in violation of her rights under the Fourth Amendment to the Constitution of the United States.

91.     Defendants Leahy, Kirk, and Tehan were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD. The City of New York and the NYPD are responsible for Defendants Leahy, Kirk, and Tehan's conduct.

92.     Plaintiff suffered injury and damages as a result of Defendants' conduct.

### AS AN FOR A THIRD CLAIM FOR RELIEF
**(Violation of Equal Protection Clause)**

93.     Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs.

94.     Defendant City has implemented and enforced a policy, practice and/or custom of violating the Fourth Amendment rights of individuals based on race and/or national origin. These home entries without proper authority have been and are being conducted predominately on Black and Latino individuals. As a result, the NYPD's policy, practice and/or custom of improper home entries violates the Equal Protection clause of the Fourteenth Amendment.

95.     The NYPD's constitutional abuses were and are directly and proximately caused by policies, practices and/or customs devised, implemented, enforced, encouraged, and sanctioned by the City, including: 1) the failure to adequately and properly screen, train, and supervise NYPD officers; 2) the failure to adequately and properly monitor and discipline the NYPD and its officers; and 3) the encouragement and

sanctioning of and failure to rectify the NYPD's use of racial and/or national origin profiling in improper home entries.

96.     Each of the Defendants have acted with deliberate indifference to Plaintiff's Fourteenth Amendment rights. As a direct and proximate result of the aforesaid acts and omissions of the Defendants, Plaintiff's Fourteenth Amendment rights have been violated. By their acts and omissions, Defendants have acted under color of state law to deprive Plaintiff of her Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

97.     Due to the NYPD improperly entering homes of Black and Latino persons in areas where Plaintiff and similarly situated individuals reside, a real and immediate threat exists that Plaintiff's Fourteenth Amendment rights will be violated by NYPD officers in the future.

**AS AN FOR A FOURTH CLAIM FOR RELIEF**
**(Municipal Liability)**

98.     Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs.

99.     There is a policy, practice and custom of NYPD officers failing to respect the Fourth and Fourteenth Amendment rights of individuals to privacy in their own homes in so far as they believe that a bench warrant provides blanket authority to enter homes of subjects and third parties.

100.    City Defendant, by and through its policymakers and agents, condoned, permitted, encouraged and/or ratified NYPD policies, practices and/or customs that permitted NYPD officers to recklessly disregard the rights of individuals when they attempt to execute bench warrants in private homes.

101.    City Defendant by and through its agents acted with deliberate indifference to the rights of individuals with whom their employees were known to come into contact, including Plaintiff.

102.    The policies practices and/or customs served to ratify or tacitly authorize the unconstitutional actions of the employees and agents of City Defendant, caused Ms. Harper to suffer constitutional violations, and were the moving force behind said deprivations.

103.    City Defendant failed to train and supervise its officials, employees and agents, including Detectives Leahy, Kirk, Tehan, and Nieh, regarding the Fourth Amendment rights of individuals, how to execute a bench warrant at a private home, the steps necessary to form a reasonable belief of the subject's residence and a reasonable belief of the subject's presence therein, and the rights of third parties not listed on the face of the bench warrant, so as to prevent the false arrest and false imprisonment of Plaintiff, which resulted in the violation of her rights under the Fourth, Sixth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

104.    City Defendant's failure to train and supervise amounts to deliberate indifference of the rights of persons with whom Defendants came into contact, including Plaintiff.

105.    Plaintiff suffered injury and damages as a result of the Defendants' conduct.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
### (Assault)

106.    Plaintiff repeats and realleges all the allegations set forth above as if fully alleged herein.

107.    Defendants Leahy, Kirk, and Tehan, acting within the scope of their employment, intentionally, willfully and maliciously assaulted Plaintiff in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact, and intentionally engaged in a violent and/or overt menacing act, which threatened such contact to the Plaintiff, and that such act(s) caused reasonable apprehension of such contact in the Plaintiff.

108.    Defendants Leahy, Kirk, and Tehan, were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD. The City of New York and the NYPD are responsible for Defendants Leahy, Kirk, and Tehan's conduct.

109.    Plaintiff suffered injury and damages as a result of Defendant's conduct.

110.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (Battery)

111.    Plaintiff repeats and realleges all the allegations set forth above as if fully alleged herein.

112.    Defendants Leahy, Kirk, and Tehan, acting within the scope of their employment, intentionally, willfully and maliciously battered Plaintiff when they, in a hostile and/or offensive manner forcefully pushed and grabbed Plaintiff without her consent and with the intention of causing harmful and/or offensive bodily contact to the Plaintiff and caused such battery.

113.    Defendants Leahy, Kirk, and Tehan, were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New

18

York and the NYPD. The City of New York and the NYPD are responsible for

Defendants Leahy, Kirk, and Tehan's conduct.

114.    Plaintiff suffered injury and damages as a result of Defendant's conduct.

115.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental

jurisdiction to hear and adjudicate such claims.

### AS AND FOR A SEVENTH CLAIM FOR RELIEF
**(False Arrest and False Imprisonment)**

116.    Plaintiff incorporates herein by reference the allegations set forth in the

preceding paragraphs.

117.    The acts and conduct of Defendants Leahy, Kirk, Tehan, and Nieh

constitute false arrest and false imprisonment under the laws of the State of New York.

Defendants intended to confine Plaintiff, and, in fact, confined Plaintiff, and Plaintiff was

conscious of the confinement. Moreover, Plaintiff did not consent to the confinement and

the confinement was not otherwise privileged.

118.    Defendants Leahy, Kirk, Tehan, and Nieh, were at all relevant times

agents, servants, and employees acting within the scope of their employment by the City

of New York and the NYPD. The City of New York and the NYPD are responsible for

Defendants Leahy, Kirk, and Tehan's conduct.

119.    Plaintiff suffered injury and damages as a result of Defendant's conduct.

120.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental

jurisdiction to hear and adjudicate such claims.

### AS AND FOR A EIGHTH CLAIM FOR RELIEF
**(Malicious Prosecution)**

121.    Plaintiff incorporates herein by reference the allegations set forth in the

preceding paragraphs.

122.     The acts and conduct of the defendants constitute malicious prosecution under the laws of the State of New York and under the Fourth Amendment to the Constitution of the United States. Defendants commenced and continued a criminal proceeding against Plaintiff. Defendants acted with actual malice in commencing and continuing the proceeding and there was an absence of probable cause for the criminal proceeding. Furthermore, the criminal proceeding was terminated favorably to Plaintiff.

123.     Defendants were at all relevant times agents, servants and employees acting within the scope of their employment by the City of New York and the NYPD. The City of New York and the NYPD are responsible for Defendants conduct.

124.     Plaintiff suffered injury and damages as a result of Defendant's conduct.

125.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

**AS AND FOR A NINTH CLAIM FOR RELIEF**
**(Negligent Hiring, Retention, Training and Supervision (State Law))**

126.     Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs.

127.     Defendant City of New York and its employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train and supervise Defendants Leahy, Kirk, Tehan, and Nieh, individuals who were unfit for the performance of police duties on July 28, 2015, at the aforementioned location.

128.     Plaintiff suffered injury and damages as a result of Defendants' conduct.

129.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

**AS AND FOR A TENTH CLAIM FOR RELIEF**

**(Violation of Article I, Section 12 of the New York Constitution)**

130.     Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs.

131.     Defendants violated Plaintiffs rights under Article 1, Section 12 of the New York Constitution.

132.     Plaintiff suffered injury and damages as a result of Defendant's conduct.

## AS AND FOR A ELEVENTH CLAIM FOR RELIEF
**(Respondeat Superior Claim Against the City Under New York Common Law)**

133.     Plaintiff incorporates herein by ereference the allegations set forth in the preceding paragraphs.

134.     The conduct of Defendants Leahy, Kirk, Tehan, Nieh, occurred while they were on duty, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of defendant City. As a result, Defendant City is liable to Plaintiffs under the doctrine of respondeat superior.

## JURY DEMAND

Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A.     A declaratory judgment that Defendants violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. 1983, and Article I, Section 12 of the New York State Constitution, and violated the laws of the State of New York.

B.      A permanent injunction preventing the City of New York from training

and permitting NYPD officers to enter homes without lawful authority as provided by the

United States Constitution and New York Constitution.

C.      That the jury find and the Court adjudge and decree that Plaintiff June

Harper shall recover compensatory damages in an amount to be determined at trial

against the individual defendants and the City of New York, jointly and severally,

together with interest and costs, and punitive damages in an amount to be determined at

trial against the individual defendants, jointly and severally.

D.      That the Plaintiff recover the cost of this suit, including her attorneys' fees

pursuant to 42 U.S.C. § 1988.

E.      Such other and further relief as the Court may deem just and proper.

Dated: December 19, 2016
          New York, New York                    Respectfully submitted,


                                                _____
                                                Carla Sanderson
                                                260 Madison Avenue, Flr. 22
                                                New York, NY 10016
                                                Tel: (646) 499-3818
                                                Fax: (646) 499-3814
                                                carla@carlasandersonlaw.com
                                                Attorney for *Plaintiff June Harper*


                                                _____
                                                Andrew Mancilla
                                                260 Madison Avenue, Flr. 22
                                                New York, NY 10016
                                                Tel: (315) 521-0561
                                                Fax: (212) 202-5140
                                                andrew@mancillalaw.com

Attorney for *Plaintiff June Harper*